IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEE ALBRITTON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-10-CV-1860-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lee Albritton seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

I.

Plaintiff alleges that he is disabled due to a variety of ailments related to obesity, including diabetes, congestive heart failure, orthopedic pain, and lower extremity edema. After his application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on July 23, 2009. At the time of the hearing, plaintiff was 46 years old. He has an eleventh-grade education and no past relevant work experience. Plaintiff has not engaged in substantial gainful activity since May 24, 2007.

The ALJ found that plaintiff was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that plaintiff suffered from severe obesity, degenerative joint disease of the lumbar spine, diabetes mellitus with neuropathy, and congestive heart failure, the

judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform a wide range of sedentary work with some manipulative and postural limitations. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of working as an order clerk, a semiconductor bonder, and a microfilm processor -- jobs that exist in significant numbers in the national economy. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In three grounds for relief, plaintiff contends that: (1) the assessment of his residual functional capacity is not supported by substantial evidence; (2) the ALJ failed to conduct a "function-by-function" analysis of his residual functional capacity; and (3) the case should be remanded for consideration of new and material evidence.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107

S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

The ALJ found that plaintiff had the residual functional capacity to perform a wide range of sedentary work. In making that determination, the ALJ relied on the testimony of Dr. Barbara Felkins, a medical consultant, who did not address whether plaintiff was required to elevate his legs periodically due to edema of the lower extremities. Because one of his treating physicians imposed such a limitation, plaintiff contends that the assessment of his residual functional capacity is not supported by substantial evidence.

The record shows that plaintiff, who at the time of the administrative hearing weighed 404 pounds, has been treated for edema in his lower extremities since at least 2004. (*See* Tr. at 19, 308). Over the years, plaintiff's edema has fluctuated, sometimes disappearing entirely. In August 2005, plaintiff exhibited "1+" pitting edema,[1] and was prescribed medication to treat the condition. (*Id.* at 395, 443). A year later, plaintiff had "[n]o pedal edema[.]" (*See id.* at 441). On October 24, 2007, Dr. Julius Wolfram, a state agency medical examiner, observed that "[t]he lower extremities are not swollen." (*Id.* at 464-65). Based in part on this report, Dr. John Durfor, a state agency medical consultant, determined that plaintiff could: (1) occasionally lift 50 pounds; (2) frequently lift 25 pounds; (3) stand, walk, and sit for a total of six hours in an eight-hour workday; and (4) perform unlimited pushing and pulling activities -- all of which are consistent with the ability to perform a full range of light work. (*See id.* at 472, 478).

At some point after plaintiff was examined by Dr. Wolfram, the swelling returned. In early 2008, Dr. Aamir Mithani, a physician at Parkland Hospital, noted that plaintiff had lower extremity pitting edema in the "2+ to 3+ range," and prescribed 20 milligrams of Lasix per day. (*See id.* at 494, 503, 543-44). Later that year, Dr. Mithani observed "2+" pitting edema in both legs and continued plaintiff on Lasix. (*See id.* at 533-34). When plaintiff presented with edema again in October 2008, his Lasix dosage was increased to 40 milligrams per day. (*See id.* at 532). By the end of 2008, plaintiff had "3+ bilateral leg and foot swelling." (*Id.* at 575-76). In his assessment plan, Dr. Michael Derond Vanpelt, a podiatrist, wrote:

> The patient is a 46-year-old male, homeless, diabetic, with congestive heart failure with chronic right leg pain, bilateral foot pain, right

---

[1] "Pitting edema" is defined as "edema in which the tissues show prolonged existence of the pits produced by pressure." *See* DORLAND'S MEDICAL DICTIONARY 568 (29th ed. 2000). It is rated on a scale of "1+," indicating mild pitting, to "4+," indicating deep pitting. *See* http://medical-dictionary.thefreedictionary.com/pitting+edema (last visited Mar. 26, 2012).

> worse than left. The patient was advised to take good care of his feet, do not walk barefooted. *Elevate his bilateral feet whenever he is not ambulating.* Follow with his primary care physician for his congestive heart failure control.

(*Id.* at 575) (emphasis added).

Plaintiff's edema continued to fluctuate throughout 2009. In January, Dr. Dalerie Wilkerson, a podiatrist, noted that plaintiff had "+1" pitting edema in both feet. (*Id.* at 547-48). At a follow-up visit with Dr. Mithani in March, plaintiff reported that he was taking his medications, felt fine, and wanted to continue taking Lasix for "lower ext. Swelling." (*Id.* at 526). No swelling was noted at that visit. (*See id.*). In April, Dr. Wilkerson observed no extremity edema. (*See id.* at 580). However, by July 7, plaintiff had "2+" pitting edema in the extremities. (*See id.* at 594-97). His Lasix dosage was increased to 60 milligrams per day "for better control of the edema[.]" (*Id.* at 597). Two weeks later, on July 21, Dr. Mithani diagnosed plaintiff with "dyspnea with lower extremity edema," and continued his Lasix prescription. (*See id.* at 679-84).

An administrative hearing was held on July 23, 2009. (*See id.* at 13). At that hearing, the ALJ called Dr. Barbara Felkins, a board-certified psychiatrist, to testify regarding plaintiff's residual functional capacity. (*See id.* at 32-36; Plf. Repl. App., Exh. A at 1). Recognizing that plaintiff's most recent residual functional capacity assessment did not account for his edema, Dr. Felkins questioned plaintiff about that condition:

> Q. [BY DR. FELKINS]: And with your feet, does the Lasix take the edema completely away?
>
> A. [BY PLAINTIFF]: Well, they just increased it a couple days ago, but right now I'm having no problems with the swelling.
>
> Q. No problem?
>
> A. No, ma'am, but they constantly hurt though.

> Q. Okay, so they're hurting?
>
> A. Yes, ma'am.

(Tr. at 33). Dr. Felkins later explained why this information was significant to her assessment of plaintiff's residual functional capacity:

> The reason I was asking that, Judge, is that, you know, what I was trying -- he's definitely been reduced to sedentary as of one of '08.
>
> * * * *
>
> But the reason I put him at sedentary is as of -- where is it, he started on Lasix, 1/25/08, and he was complaining of foot pain and edema and then they noted he had two plus edema at five of '08. He had three plus at 12 of '08. So he has had a lot of edema and the chronic peripheral neuropathy and the obesity, which would put him at sedentary. That's by about one of '08, prior to that I would have him at a full range of light.

(*Id.* at 33-34). Relying on this expert medical testimony, the ALJ found that plaintiff had the residual functional capacity to perform a wide range of sedentary work. In her decision, the ALJ wrote:

> The medical expert concluded that the claimant has been limited to sedentary work since January 2006 [*sic*] because he was started on Lasix on January 25, 2008; the claimant was complaining of foot pain and edema. The treatment notes reflect 2+ edema in May 2008 and 3+ in December 2008, indicating significant edema. Furthermore, the claimant also had chronic peripheral neuropathy and obesity. Prior to January 2008, the medical expert reported that she thought that the claimant could perform a full range of light work. The hearing testimony of the medical expert is credible and consistent with the medical evidence in the record. Nevertheless, the undersigned Administrative Law Judge gives the claimant the benefit of the doubt that he has been limited to a wide range of sedentary exertional work since the date that he protectively filed his application for supplemental security income.

(*Id.* at 69-70).

"As factfinder, the ALJ has the sole responsibility for weighing the evidence and choosing whichever limitations are most supported by the record." *Musgrove v. Astrue*, No.

3-07-CV-0920-BD, 2009 WL 3816669 at *6 (N.D. Tex. Nov. 13, 2009), *citing Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Contrary to plaintiff's argument, the ALJ did not give more weight to the testimony of Dr. Felkins, a non-examining psychiatrist,[2] than to Dr. Vanpelt, a treating specialist. First, there is no apparent conflict between the two opinions. Although Dr. Vanpelt recommended in December 2008 that plaintiff elevate his feet when not walking, that recommendation was made when plaintiff exhibited "3+" edema -- the most swelling ever documented in the medical record. (*See* Tr. at 575). By the time of the administrative hearing in July 2009, plaintiff reported "no problems" with swelling. (*Id.* at 33). Because plaintiff denied any swelling and acknowledged that his edema was adequately controlled by medication, there was no reason for Dr. Felkins to consider whether plaintiff was required to periodically elevate his legs.

The objective medical evidence also supports the conclusion that Dr. Vanpelt's recommendation was not long-term or permanent. Aside from Dr. Vanpelt, no other medical professional who treated plaintiff over an 18-month period from January 2008 to July 2009 ever recommended that he elevate his legs to alleviate swelling. (*See id.* at 494, 503, 526-27, 531-34, 543-48, 594-97). Nor, for that matter, was such a recommendation made by any medical provider who treated plaintiff *after* the administrative hearing. (*See id.* at 624-29, 631-33, 639-745). The only other reference to elevation of the extremities anywhere in the record is a single entry made by a nurse in August 2005, who told plaintiff to elevate his feet "PRN," or as needed. (*See id.* at 443). Even if the court considers that recommendation, it would not preclude plaintiff from performing a wide range of sedentary work.

---

[2] To the extent plaintiff contends that the ALJ improperly relied on Dr. Felkins's opinion because she is a psychiatrist and not a podiatrist or an internist, such an argument is without merit. The social security regulations do not limit the ability of a non-specialist to testify regarding the specialty of another. Because Dr. Felkins is a licensed physician, she is an "acceptable medical source" under the regulations. *See Beckett v. Astrue*, No. 10-1370-SAC, 2011 WL 6055863 at *3 (D. Kan. Dec. 6, 2011), *citing* 20 C.F.R. § 404.1527(a)(2).

Nor did plaintiff ever complain about swelling of the extremities while sitting. When asked at the administrative hearing whether he had a "problem sitting," plaintiff responded that he could "usually sit for a little while and I have to get up because the spine condition and my weight and my leg." (*See id.* at 25). Plaintiff also indicated that he thought he could do a job that required sitting or standing as long as he could "pace myself" or "take my time doing it[.]" (*See id.* at 27). None of this evidence even remotely suggests a need to elevate the legs.

Finally, the ALJ had an opportunity to observe plaintiff for 43 minutes during the administrative hearing. (*See id.* at 13-45). Near the midpoint of the hearing, the ALJ asked plaintiff if he was able to stand, suggesting that, at least up to that point, plaintiff was seated. (*See id.* at 27). Had plaintiff elevated his feet at any time during the hearing, it is reasonable that someone -- either the ALJ, Dr. Felkins, or plaintiff himself -- would have noted that fact on the record, particularly since the ALJ specifically asked plaintiff if he had a problem sitting. (*See id.* at 25). Yet the hearing transcript is devoid of any such observation. (*See id.* at 13-45).

In the absence of *any* evidence, much less any medical opinion evidence, that contradicts Dr. Felkins's opinion limiting plaintiff to sedentary work after January 2008, the ALJ was entitled to rely on that opinion in assessing his residual functional capacity. *See Beckett v. Astrue*, No. 10-1370-SAC, 2011 WL 6055863 at *3 (D. Kan. Dec. 6, 2011). While plaintiff complains that the "issue of elevation" was not discussed at the hearing, he cites no rule or regulation requiring such a discussion. Nor does the failure to discuss "the issue of elevation" in any way undermine the validity of Dr. Felkins's testimony. Although Dr. Felkins did not specifically address the possibility of such a limitation, she referenced Dr. Vanpelt's notes and made clear that she fully considered the potential limiting effects of plaintiff's edema. (*See* Tr. at 33-34). Accordingly, the assessment of plaintiff's residual functional capacity is supported by substantial evidence.

B.

Plaintiff also faults the ALJ for failing to make a "function-by-function" assessment of his residual functional capacity.[3] Under the applicable regulation:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184 at *1 (S.S.A. Jul. 2, 1996). Examples of functions to be assessed include the ability to sit, stand, and walk. *See* 20 C.F.R. 404.1545(b). Plaintiff argues that the assessment of his residual functional capacity by Dr. Felkins did not comply with this regulation and, as a result, the ALJ improperly relied on such testimony in determining that he could perform sedentary work.

An ALJ may rely on a "function-by-function" assessment performed by a state examiner. *See Beck v. Barnhart*, 205 Fed.Appx. 207, 213-14, 2006 WL 3059955 at *5 (5th Cir. Oct. 27, 2006). Here, Dr. Durfor performed a "function-by-function" analysis of plaintiff's residual functional capacity in December 2007 -- more than 18 months before the administrative hearing. (*See* Tr. at 471-78). Rather than rely on that assessment, which indicated that plaintiff could perform a full range of light work, the ALJ deferred to Dr. Felkins, who determined that plaintiff could perform only sedentary work as of January 2008 due to edema, chronic peripheral neuropathy, and obesity. (*See id.* at 34). However, Dr. Felkins never explained which particular functions -- *i.e.* walking, standing, or both -- were compromised by plaintiff's impairments.

---

[3] Although plaintiff characterizes this claim as an attack on a hypothetical question presented to the vocational expert, he does not argue that the hypothetical itself was improper. Instead, plaintiff contends that the hypothetical was based on an erroneous residual functional capacity assessment. (*See* Plf. MSJ Br. at 9-10).

The court has little difficulty concluding that any error in this regard was harmless. It is clear that Dr. Felkins fully considered plaintiff's edema and medical records in assessing his physical limitations. (*See id.* at 33-35). In fact, Dr. Felkins cited plaintiff's edema as a primary reason for her decision to limit him to sedentary work. (*See id.* at 34). Even if Dr. Felkins more fully described her reasoning, there is no reason to believe that she would have found any additional functional limitations. This is particularly true because, as discussed herein, the record does not indicate that plaintiff was limited in his ability to sit by the need to periodically elevate his leg. There simply is no reasonable possibility that the outcome of this case would have been different had the ALJ complied with the requirements of SSR 96-8p.

C.

In a separate motion, which is incorporated by reference in his summary judgment briefing, plaintiff contends that this case should be remanded for consideration of new and material evidence under 42 U.S.C. § 405(g). At issue is evidence from Dr. Peter Louis, an internist, who prepared a consultive report on March 1, 2011, and testified at a hearing on plaintiff's new application for SSI benefits held on May 2, 2011.[4]

Where evidence is presented to the reviewing court for the first time, a remand is appropriate only if the evidence is "new" and "material," and the plaintiff demonstrates "good cause" for not presenting the evidence at the administrative level. *See* 42 U.S.C. § 405(g); *Ripley*, 67 F.3d at 555. Evidence is "material" if: (1) it relates to the time period for which benefits were denied -- *i.e.* it does not concern a subsequent disability or the deterioration of a previously non-disabling condition;

---

[4] In his reply, plaintiff argues for the first time that the subsequent decision awarding him SSI benefits justifies a remand under sentence six of 42 U.S.C. § 405(g). (*See* Plf. Repl. at 1-4). Although the Fifth Circuit has not addressed this issue, at least one circuit court has held that a subsequent favorable disability determination, by itself, is not "new and material evidence." *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653-54 (6th Cir. 2009).

and (2) there is a reasonable probability that the evidence would have changed the outcome of the Commissioner's decision. *See Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003), *citing Ripley*, 67 F.3d at 555. In the instant case, the relevant time period for the denial of SSI benefits runs from May 24, 2007, the protective filing date of plaintiff's application, to September 10, 2009, the date of the ALJ's decision. *See* 20 C.F.R. §§ 416.501 & 416.330.

Neither the consultive report prepared by Dr. Louis nor his testimony at the administrative hearing is "material." The consultive report is based on observations made by Dr. Louis on March 1, 2011 -- nearly 18 months after the ALJ denied plaintiff's application for SSI benefits. Indeed, plaintiff does not argue the materiality of this report. Instead, plaintiff's argument focuses almost exclusively on the following testimony given by Dr. Louis at the administrative hearing on May 2, 2011:

> Q. [BY COUNSEL]: In general, and not necessarily with the claimant but in general with people that have lower extremity edema would elevation of the legs be a normal treatment of that?
>
> A. [BY DR. LOUIS]: That would be part of the treatment.
>
> Q. Okay. And at what level would they have to elevate their legs to for that to be therapeutic?
>
> A. I have no idea.
>
> Q. Okay. Would it not be at heart level?
>
> A. If you are sitting it would probably be above heart level.
>
> Q. Let me ask you, how often would a person generally have to elevate their legs?
>
> A. For what reason?
>
> Q. If they had edema?

> A. If they had edema I would try to find out what their cardiac state is and their fluid and salt intake and try to treat it that way by cutting these things out but that would be one of the later issues that would be raised. But that is also an acceptable treatment with edema but not a major one.
>
> Q. Okay. Let me just put it this way: if you have a claimant with edema and the other things that you found here would you recommend a person to elevate their legs and if so, how often and under what circumstances and so forth would they need to elevate them all day long, would they need to elevate them occasionally?
>
> A. They would have to elevate them occasionally when seated.
>
> Q. Okay. If we had someone that is working at a sedentary job and they come in and have edema of their legs, what would you advise them such as they need to elevate their feet, you need to quit your job if necessary in order to elevate your heart. What would you generally tell them?
>
> Q. I would assume that I have them on optimal medication for heart failure or other problems the one thing that I would tell them when they are seated to elevate their legs but at the same time it could be impossible for them to elevate their legs at heart level but the more interesting thing to do is get them better support stockings or put their legs on a stool or something like that. But I don't think that this particular setting that the elevation of the lower extremities that one would need other treatment too. I think that adequate treatment for whatever underlying issues that they have and then the other major thing to do is to get them the custom support hose.

(Plf. MSJ App. at Exh. A, pp. 4-6). While recognizing that any testimony by Dr. Louis based on observations made on or after March 1, 2011 would not meet the materiality standard, plaintiff argues that "general medical opinion" testimony establishes that "elevation of the lower extremities to heart level is an appropriate part of the treatment in cases involving edema[,]" and therefore relates back to the relevant date. (*See* Plf. Mot. Rem. at 2-3). Even accepting this characterization of his testimony, Dr. Louis never indicated that elevation of the legs would be an appropriate treatment *for*

*plaintiff* during the relevant time period. To the contrary, Dr. Louis noted that leg elevation would be "one of the *later* issues that would be raised" and was "*an* acceptable treatment with edema *but not a major one.*" (Plf. MSJ App., Exh. A at 5) (emphasis added). According to Dr. Louis, the best treatment for someone with edema working at a sedentary job would be "adequate treatment for whatever underlying issues that they have and then the other major thing to do is to get them the custom support hose." (*Id.*, Exh. A at 6). At most, Dr. Louis testified that leg elevation is properly prescribed to a certain class of edema sufferers who do not respond to other forms of treatment. But plaintiff indicated at the first administrative hearing that his edema *had* improved as a result of medical treatment. (*See* Tr. at 33). Thus, plaintiff was not within the limited class of edema sufferers for whom Dr. Louis would recommend leg elevation.

Moreover, plaintiff has not shown "good cause" for failing to present this new evidence earlier. That plaintiff hired a new lawyer after the denial of his first application for SSI benefits does not constitute "good cause" for a remand. *See, e.g. Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) ("The mere fact that a medical report is of recent origin is not enough to meet the good cause requirement."); *Geyen v. Sec'y of Health and Human Servs.*, 850 F.2d 263, 264 (5th Cir. 1988) (fact that claimant was sent to psychologist by an attorney hired after administrative proceeding concluded did not constitute "good cause" for remand to consider new evidence). And while plaintiff may be poor and homeless, those conditions remained unchanged throughout this proceeding. Under these circumstances, a remand is not warranted under section 405(g).

## CONCLUSION

The hearing decision is affirmed in all respects.

SO ORDERED.

DATED: March 27, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE